**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CARLOS A. ATCHISON,                          :

      Plaintiff,                          :

vs.                                                        :   CA 14-00053-C

CAROLYN W. COLVIN,                         :
Acting Commissioner of Social Security,
                                      :

      Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, the plaintiff's brief, the Commissioner's brief, and the arguments of counsel for the parties at the October 9, 2014 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of (Continued)

Plaintiff alleges disability due to a left hand/arm injury, back pain, and sarcoidosis. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.     The claimant meets the insured status requirements o the Social Security Act through December 31, 2015.**

**2.     The claimant has not engaged in substantial gainful activity since July 17, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

**3.     The claimant has the following severe impairments: status post left hand crush injury and sarcoidosis (20 CFR 404.1520(c) and 416.920(c)).**

\*     \*     \*

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416926).**

\*     \*     \*

**5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally lift and carry up to 20 pounds and frequently up 10 pounds with the right dominant arm.  He cannot lift or carry at all with the left non0dominant arm.  He can stand or walk for about 6 hours in an 8-hour workday and sit for 6 hours with normal breaks.  The claimant cannot perform any pushing or pulling of arm controls with the left non-dominant upper extremity.  He should never climb ladders, ropes or scaffolds.  He cannot perform overhead reaching with the left extremity or reaching with the left arm in the fully extended position.  He cannot perform fine manipulation or any strong grasping with the left non-dominant hand.  He can only occasionally bend or squat.  He would be expected to be off-task or non productive up to five percent of the workday due to deficits in concentration, persistence or pace.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements 20 CFR 404.1529 and 416.929 and SSRs 96-4 and 96-7p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

---

Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonable be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Throughout the record and at the hearing, the claimant alleges that he is unable to work due to disabling problems with his arms and back following a 1996 injury.  He testified that he could not bend or lift with his left arm.  In addition, he allegedly has not feeling in his left hand fingers and has no strength at all in his left hand.  He also reports that he cannot grasp with his right hand and has lower back pain.  He takes over the counter medication.  During a 2011 consultative examination he reported that he had been diagnosed with sarcodosis about two years earlier via a lung biopsy.  He stated that he gets short of breath when he does "too much" physical activity like walking or running.  During the hearing, he reported that as far as his activities of daily living, he watches television, reads, and tries to sweep.  He is able to shop but does not push the cart.  While he testified that he does not drive, in a function report he stated that he is able to drive.  He also reported in the function report that he shops for clothes, food, and personal items.  He likes to fish but cannot bait a hook [].

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In terms of the claimant's alleged disabling impairments, medical records show that the claimant suffered a left hand crush work-related injury in February 1997 after getting his hand caught in a press.  He underwent multiple surgeries for soft tissue re-attachment and skin grafting.  Records dated two months later show that after hospitalization, surgeries, and physical therapy, the claimant was doing much better. He reported requiring assistance with tying his shoes and other bilateral tasks, however he was dressing and feeding himself and performing hygiene tasks independently. Medical records show several visits to his primary care physician from 1997 to 2003 complaining of lingering hand/arm pain and soreness as well as decreased sensations in the left hand.  However, notably, in January 1999, the claimant was offered a job working on a cardboard baling machine and the claimant's orthopedist, as well as the claimant, felt that this was a job that the claimant could perform.  Primary care physician records from 2004-2008 are sparse and show no significant complaint of hand pain or weakness [].

During a December 2009 physical consultative examination, the claimant reported that he was independent in his activities of daily living, however he needed help- getting dressed, particularly with his pants and doing buttons. He also reported "mild" back pain that had begun 4 months earlier and was alleviated by Tylenol. He could drive short distances and lift a gallon of milk with his right hand. On examination, the claimant had decreased strength of the left upper extremity with no strength or dexterity of the left hand. He also had no range of motion of the left hand/wrist and decreased range of motion of the left elbow, shoulder and lumbosacral spine. He was right hand dominant. The undersigned gives significant weight to the examiner's opinion that the claimant left hand was essentially nonfunctional, and he had limited use of his left upper extremity. However, the examiner's opinion that the claimant would have difficulty walking or standing for a full day is an overestimate of the severity of the claimant's restrictions and limitations and based only on a snapshot of his functioning [].

Since his alleged onset date, it does not appear that the claimant has received any significant medical treatment for his alleged impairments. During an October 15, 2011 physical consultative examination, the claimant reported that he was dependent with his/her activities of daily living and needed help dressing, bathing and cooking. He did not drive, shop or do housework. Except as described below, musculoskeletal evaluation of the claimant reveled no muscle asymmetry, atrophy, involuntary movements, structural deformity, effusion, periarticular swelling, erythema, heat, swelling or tenderness. He had disfigurement of left hand and arm with scars and atrophy present. He also had decreased range of motion of left hand and arm. His gait and station were normal, he was able to rise from a sitting position without assistance, stand on his tiptoes and heels and tandem walk without problems. He was able to bend and squat without difficulty. His grip strength was 0/5 in the left hand; he was able to wiggle his fingertips only. His right hand strength was 5/5 with adequate fine motor movements, dexterity and ability to grasp objects. He had good tone and 5/5 strength bilaterally in all muscle groups. He had no left arm reflexes. He was light touch, pain, position, and vibratory intact throughout except left arm and hand. He had only minimal feeling in his index and ring finger on the left hand. He was diagnosed with left hand/arm deformity status-post trauma and saroidosis. The examiner opined that the claimant had almost no use of his left arm and needed help performing basic activities of daily living. He felt that the claimant should be able to sit, walk, and/or stand for a full workday; however, he was unable to lift/carry objects at all. He would be unable to type or do anything where he needed more than one hand/arm. The undersigned gives little weight to the opinion that the claimant cannot lift or carry any objects at all this is inconsistent with the examination showing he had no right hand/arm limitations [].

As for other opinion evidence, the undersigned gives significant weight to the State agency physicians who provided residual functional capacity assessments at the initial and reconsideration levels and concluded that the claimant is capable of a limited range of light level work. Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like

this in which there exist a number of other reasons to reach similar conclusions (as explained throughout this decision) [].

In sum, the undersigned considered but granted little probative weight to the claimant's testimony regarding the severity of his impairments.  As discussed above, the paucity of evidence does not support the claimant's ultimate allegation of disability.  Records show that following his left hand injury, the claimant was able to return to full-time work and was employed until July 2011 as forklift operator.  It appears that he stopped working there after he was asked to perform other duties.  There is no evidence of re-injury to the hand.  There is also no evidence that the claimant's sarcoidosis causes him any functional limitations at this time.  The claimant has received no medical care since his alleged onset date, is not taking any prescription medication, and only takes over the county medicine of Motrin and Tylenol as needed.  While records confirm that the has a severe upper extremity impairment that causes major loss of the use of his let upper extremity, records otherwise show minimal abnormalities.  His work activity and lack of treatment reflects a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments.  Based on objective evidence of the claimant's impairments and the medical evidence as a whole, the residual functional capacity has been reduced to light, with postural and manipulative limitations.

**6.      The claimant is unable to perform and past relevant work (20 CFR 404.1565 and 416.965).**

*          *          *

**7.      The claimant was born on December 30, 1974 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

*          *          *

**11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2011, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. at 25-30) (internal citations omitted) (emphasis in original).  The Appeals Council affirmed the ALJ's decision (Tr. 1-6), and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work.  *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. An ALJ, in turn:

> [U]ses a five-step sequential evaluation to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.*, 457 Fed. App'x 868, 870 (11th Cir. 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f)); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy.  *Phillips*, 357 F.3d at

---

[2]       "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

1237, 1239; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert ("VE"), is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)).  Also, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'"  *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, Atchison asserts that the Commissioner's decision to deny him disability insurance benefits and supplemental security income is in error (*i.e.*, not supported by substantial evidence) because the ALJ erred in her residual functional capacity ("RFC") determination by assigning more weight to the opinions of a non-treating, non-examining state agency physician, Dr. Shital Patel, M.D. ("Dr. Patel")

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

instead of relying on the opinions of Dr. John J. Nelson, M.D. ("Dr. Nelson") and Dr. Tracy C. Jacobs, M.D. ("Dr. Jacobs"), two examining, consulting physicians.

Initially, the Court notes that the responsibility for making the RFC determination rests with the ALJ. *Compare* 20 C.F.R. §§ 404.1546(c) & 416.946(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. App'x 890, 891-92 (11th Cir. 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins*, 457 Fed. App'x at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c) & 416.945(a)-(c)). Here, the ALJ determined Atchison's physical RFC as follows:

> **After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally lift and carry up to 20 pounds and frequently up 10 pounds with the right dominant arm. He cannot lift or carry at all with the left non0dominant arm. He can stand or walk for about 6 hours in an 8-hour workday and sit for 6 hours with normal breaks. The claimant cannot perform any pushing or pulling of arm controls with the left non-dominant upper extremity. He should never climb**

**ladders, ropes or scaffolds.  He cannot perform overhead reaching with the left extremity or reaching with the left arm in the fully extended position.  He cannot perform fine manipulation or any strong grasping with the left non-dominant hand.  He can only occasionally bend or squat.  He would be expected to be off-task or non productive up to five percent of the workday due to deficits in concentration, persistence or pace.**

(Tr. at 26) (emphasis in original).

The law in the Eleventh Circuit is clear that while "'the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion'" and the ALJ articulates her reasoning for rejecting the subject opinion. *Sryock*, 764 F.2d at 835 (quoting *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981)). Here, the ALJ gave "significant weight" to Dr. Nelson's opinion regarding Atchison's left hand and left upper extremity, but she stated that Dr. Nelson's opinion that Atchison would have difficulty walking or standing for a full day is an "overestimate of the severity of [his] restrictions and limitations and based only on a snapshot of his functioning[.]" (Tr. at 27).  Regarding Dr. Jacobs' opinion, the ALJ gave "little weight to [her] opinion that [Atchison] cannot lift or carry any objects at all as this is inconsistent with the examination showing he had no right hand/arm limitations[.]" (Tr. at 28). The Court finds that no error was committed because the ALJ correctly applied the law, and the evidence of record supports the ALJ's decisions to (1) reject Dr. Nelson's opinion regarding Atchison's ability to walk and stand and (2) give "little weight" to Dr. Jacobs' opinion that Atchison is unable to lift or carry objects at all.

Dr. Nelson opined that Atchison "**may** have difficulty walking, and/or standing for a full workday." (Tr. at 284, emphasis added).  While Dr. Nelson notes that the claimant complained about lower back pain at the December 19, 2009 physical examination, the claimant stated that Tylenol alleviates the "mild" pain.  (Tr. at 282).  In

9

addition, Atchison continued to work for more than eighteen (18) months after the Dr. Nelson examination (Tr. at 175), and Dr. Jacobs concluded after the October 15, 2011 physical examination that Atchison "should be able to sit, walk, and/or stand for a full workday[.]"  (Tr. at 289).  Therefore, the evidence supports the ALJ's rejection of Dr. Nelson's opinion that Atchison would have difficulty walking or standing for a full day. The ALJ's decision to give "little weight" to Dr. Jacobs' opinion that Atchison is unable to lift or carry objects at all likewise is supported by the evidence of record, including the physical examination conducted by Dr. Jacobs that demonstrated no limitations with Atchison's dominant right hand and arm.  (Tr. at 286-90).  Dr. Jacobs' conclusion regarding the claimant's lifting and carrying abilities is also contradicted by other parts of the record, such as Dr. Nelson's physical examination (Tr. at 282-85), Dr. Patel's physical RFC assessment (Tr. at 77-82), and the claimant's testimony at the December 20, 2012 hearing before the ALJ (Tr. at 45-46), all of which indicate that that Atchison's right hand and arm have no limitations. Consequently, the ALJ's decision to give "little weight" to Dr. Jacobs' opinion that Atchison is unable to lift or carry objects at all is supported by evidence.

As for Dr. Patel's opinion, the ALJ gave "significant weight" to his conclusion that Atchison is capable of a limited range of light level work.  (Tr. at 28). Because the ALJ articulated good cause to discount both Dr. Nelson's opinion as to Atchison's walking and standing abilities and Dr. Jacobs' opinion as to Atchison's lifting and carrying abilities, the opinion of the non-examining state agency physician Dr. Patel does not conflict with any credible examining source, and, thus, the opinion was properly considered by the ALJ. *See Thomas v. Colvin*, No. 11-00569-B, 2015 WL 4458861, at *14 & n.8 (S.D. Ala. July 21, 2015); *Milner v. Barnhart*, 275 Fed. App'x 947, 948 (11th Cir. 2008) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)).

The Court also finds that the ALJ's RFC determination is supported by substantial evidence. To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, No. 11-0084-CG-N, 2013 WL 593497, at *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. 2013);[4] *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5]

---

[4]     In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[5]     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, No. 3:08CV839-SRW, 2010 WL 3825617, at *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. App'x at 636 (internal quotation marks omitted))); *Id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ (Continued)

In order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer*, 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, No. 11-00545-C, 2012 WL 1565624, at *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases— include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F. Supp. 2d 1007 (S.D. Ala. 2003). In this case, of course, there are physical assessments of record from examining physicians.  As previously discussed, however, the ALJ rejected Dr. Nelson's opinion as to Atchison's walking and standing abilities and gave "little weight" to Dr. Jacobs' opinion as to Atchison's lifting and carrying abilities for good cause. Contrarily, the ALJ properly accorded Dr. Patel's physical RFC assessment "significant weight," a determination consistent with substantial evidence in the record, as explained more fully below.

Importantly, in establishing Atchison's RFC, which means determining Atchison's "remaining ability to do work despite [his] impairments[,]" *Packer*, 542 Fed.

---

*could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

App'x at 891—keeping a focus on the extent of those impairments as documented by the credible record evidence—the ALJ sifted through the medical evidence of record (*see* Tr. at 27-28), along with the claimant's testimony (*see* Tr. 26-28 & 38-48), to conclude that "[b]ased on objective evidence of the claimant's impairments and the medical evidence as a whole, the residual functional capacity has been reduced to light, with postural and manipulative limitations." (Tr. at 28). For instance, the ALJ considered the claimant's sparse medical records spanning from February 1997, when he initially suffered the work-related injury to his left hand, to October 2008. (Tr. at 27). The ALJ also considered Atchison's own function report and his testimony at the hearing before the ALJ about the severity of his impairments and disabilities. (Tr. at 26-28).[6]

As previously discussed, the ALJ also considered the December 2009 physical consultative examination by Dr. Nelson, the October 2011 physical consultative examination by Dr. Jacobs, and the physical RFC assessment by Dr. Patel. Because the ALJ appropriately rejected Dr. Nelson's opinion regarding Atchison's ability to walk and stand and gave "little weight" to Dr. Jacobs' opinion that Atchison is unable to lift or carry objects at all, the ALJ did not err in giving "significant weight" to Dr. Patel's assessment that Atchison: (1) can occasionally lift and carry up to 20 pounds and frequently up to 10 pounds with the right dominant arm; (2) cannot lift or carry at all with the left non-dominant arm; (3) can stand or walk for about 6 hours in a normal 8-hour workday; (4) sit for about 6 hours in an 8-hour workday; (5) cannot push or pull arm controls with the left non-dominant upper extremity; (6) should never climb

---

[6]    Specifically, the ALJ assigned "little probative weight" to Atchison's testimony and detailed how the credible evidence of record, including Atchison's medical records, do not support the contentions that (1) Atchison's sarcoidsois causes him any functional limitations or (2) he otherwise suffers from a severe physical impairment outside of his left non-dominant extremity. (Tr. at 28).

ladders, ropes, or scaffolds; and (7) is limited in reaching, performing fine manipulation, and grasping that involves his left non-dominant extremity, arm, or hand.  This analysis shows to this Court that the ALJ considered Atchison's physical condition as a whole in determining his physical RFC. Accordingly, the ALJ's physical RFC determination provides an articulated linkage to the medical evidence of record. The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC.  *See, e.g., Hanna*, 395 Fed. Appx. at 636 ("[An ALJ's] decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed. App'x at 891-92 ("[An ALJ must] provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by "showing her work," the ALJ has provided the required "linkage" between the record evidence and her RFC determination necessary to facilitate this Court's meaningful review of her decision.

Because substantial evidence of record supports the Commissioner's determination that Atchison can perform the physical and mental requirements of a reduced range of light work as identified by the ALJ (*see* Tr. at 26-28), and the plaintiff makes no argument that this RFC would preclude his performance of the light jobs identified by the VE during the administrative hearing (*compare* Doc. 13 *with* Tr. 29-30 & 50-53),[7] the Commissioner's fifth-step determination is due to be affirmed. *See, e.g.,*

---

[7]     Although the plaintiff's brief did not include this argument under its  "Claims on Appeal" (*see* Doc. 13 at 2), counsel for the plaintiff argued at the October 9, 2014 that the ALJ somehow erred in her decision regarding Atchison's ability to perform the jobs identified by the (Continued)

*Owens v. Comm'r of Soc. Sec.*, 508 Fed. App'x 881, 883 (11th Cir. 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given his RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]" (internal citations omitted)); *Land v. Comm'r of Soc. Sec.*, 494 Fed. App'x 47, 50 (11th Cir. 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 24th day of September, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

VE at the administrative hearing because Social Security Ruling 83-14 provides that bilateral manual dexterity is required for the performance of substantially all unskilled sedentary occupations. The Undersigned, however, finds that to the extent the ALJ erred in relying on the VE's testimony regarding Atchison's ability, considering the condition of his left hand and arm, to perform the occupation of "surveillance system monitor," a sedentary occupation, such error was harmless as two of the jobs identified by the VE and cited by the ALJ in her decision are "usher" and "gate guard," which are light, not sedentary occupations.  (Tr. at 29-30 & 50-53).